### Western Union Telegraph Co. v. Robert Drake.

Delivered November 28, 1896.

**1.   Idem Sonans—Suppression of Depositions.**
The names "Frank Simons," "F. A. Symonds," and "Frank Symonds," are idem sonans, and the fact that they are indifferently used in the taking of a deposition will not be ground for its suppression.

**2.   Interrogatories—Answers Responsive—Opinion of Witness.**
See the opinion for answers to interrogatories which were held not to be subject to the objections that they were not responsive or were but the opinions of the witness.

**3.   Same—Answer to Only Part of Question.**
In answering interrogatories, the failure of a witness to reply to the second clause of a question does not condemn his answer to the first clause.

**4.   Evidence—Time Necessary to Deliver Telegram.**
Where a witness has testified that he was working about one mile from the telegraph office at a particular time, it is not reversible error to permit him to further state that it would have taken not over thirty minutes to deliver a telegraphic message to him.

**5.   Same—Precautions Taken to Secure Delivery of Telegram.**
Testimony that plaintiff had told witness that his mother was very sick, that he was expecting a telegram, and that it would come in care of witness' husband, and asking that it be delivered to plaintiff immediately, was admissible as showing the precautionary measures that had been taken by plaintiff to secure the prompt delivery of the message.

**6.   Telegraph Company—Addressee's Information Outside of Message—Charge of Court.**
Plaintiff wrote to his brother-in-law, at whose house his mother lay ill, asking him to wire him at once if his mother's condition should indicate that there was no chance for her recovery, and in this letter mentioned the receipt of a letter stating that his mother was very sick.   Held, that an instruction was properly refused to the effect that, if the jury should believe plaintiff had received information of the condition of his mother's health, they would find for defendant.

**7.   Telegraph Company—Circumstances Preventing Addressee's Prompt Response to Telegram—Charge of Court.**
Plaintiff testified that if a message had been delivered to him on a certain day, he would have reached his mother's bedside on the next day.   He further testified that whenever he wanted to leave, he had to first obtain leave of absence from his roadmaster.   Held, that an instruction was properly refused to the effect that the jury would find for defendant if they believed plaintiff's going depended upon the permission of the roadmaster.

Appeal from Cooke.   Tried below before Hon. D. E. Barrett.

*Wilkins & Vinson*, for appellant.

*Green & Culp*, for appellee.

TARLTON, CHIEF JUSTICE.—This appeal is from a verdict and judgment in the sum of $500, recovered by the appellee from the appellant as damages, on the ground of the negligent failure to deliver a telegraphic message, dated September 5, 1894, sent by one Joe Harding from Gainesville, Texas, addressed to the appellee at Texarkana, Arkansas, care of B. F. Casey, Cotton Belt yards, and reading: "You had better come home at once. Your mother no better."

The appellee, Robert Drake, was the son of Mary Drake, who was ill at the residence of her son-in-law, Joe Harding, at Gainesville. The plaintiff was at work on a section of railroad near Texarkana, and learning of the illness of his mother, he made arrangements with his brother-in-law Harding, should his mother's condition not improve, to telegraph to him at Texarkana, care of B. F. Casey, Cotton Belt yards. In accordance with this arrangement, Harding filed with the appellant on September 5, 1894, the message reading and addressed as above stated.

The verdict of the jury, under the charge of the court, which, as we think, very accurately and appositely submitted the issues made by the pleadings, establishes on ample evidence the facts of negligence in the transmission of the message on the part of the defendant, of the absence of contributory negligence on the part of the plaintiff or of Joe Harding, the transmitter, of the consequent deprivation to plaintiff of the privilege of being present with his mother before and at the time of her death, and of the damages sustained by him in the sum awarded. We accordingly so find.

*Conclusions of Law.*—1. The plaintiff took the deposition of a man whose name, as given in the notice of the filing of the interrogatories, was "Frank Simons." The deposition was signed by "F. A. Symonds." The certificate of the officer attested that it was subscribed and sworn to by the witness "Frank Symonds." We hold that there was no error in refusing to suppress the deposition on account of the alleged variance between the names F. A. Symonds and Frank Simons. F. A. Symonds and Frank Simons and Frank Symonds do not indicate different men. Dillahunty and Dillahinty, Yarbery and Yarbro, Giboney and Gibney, Farris and Forris, have been held to be idem sonans. 74 Texas, 344; 78 Texas, 16; 81 Texas, 427; 82 Texas, 63. So, F. A. Symonds, Frank Symonds and Frank Simons may be thus considered.

The third interrogatory propounded to the witness Symonds was as follows: "If in answer to the above interrogatory No. 3 you say you were foreman in the yards of the Cotton Belt Railway Co. during the month of September, 1894, then state if you had a man by the name of B. F. Casey working for you during said time. And if you answer that

you did have such a man working under you, then state where said B. F. Casey was at during the 5th and 6th of September, 1894, during working hours. Also state what the working hours in the yards of the Cotton Belt Railway Co. at Texarkana were." Answer: "I had charge of the gang during the month of September, 1894, and had a man by the name of B. F. Casey working for. me during that month and year above stated. He was engaged repairing cars on the repair track the 5th and 6th of September, 1894, from 7 a. m. to 12 m. and from 1 to 5 p. m."

The court correctly overruled the proposition that the foregoing answer was not responsive to the interrogatory. In effect, the answer shows that the witness, as a car inspector, was foreman of a gang at the time inquired about, and that Casey was working under him during the working hours stated.

The sixth interrogatory propounded to this witness was as follows: "If a messenger of the Western Union Telegraph Co. had made inquiry of you as to the whereabouts of said B. F. Casey on either the 5th or 6th of September, 1894, could you or not have directed him where to find him at; and state fully what you could and would have done if any such inquiry had been made of you." Answer: "If such inquiry had been made of me, I could have directed and would have done so, as I knew his, B. F. Casey's, whereabouts at all times."

The court correctly refused to suppress the foregoing answer, on the alleged ground that it was but the opinion of the witness.

The seventh interrogatory to the witness Symonds was as follows: "To what extent was B. F. Casey known by the men working about the yards of. the Cotton Belt Railway Co.? State how far Casey was at work from the office of the defendant Western Union Telegraph Co. in Texarkana, Texas, on the 5th and 6th of September, 1894." Answer: "He was well known in and around Texarkana, Texas, by the laboring classes, as he made a canvass for public office within a radius of five blocks."

The court correctly overruled the motion to suppress this answer, on the alleged ground that it was the opinion of the witness and was not responsive to the interrogatory. The answer indicates that the extent of Casey's acquaintance among the laboring classes was a matter known to the witness. The fact that he made a canvass for public office, referred to as a means of knowledge, does not render the answer irresponsive. Nor does the failure of the witness to state in reply to the second clause of the question how far Casey was at work from the office of the defendant, condemn his answer to the prior clause.

2. The plaintiff testified that on September 5, 1894, he was at work on the railway section running west from Texarkana, about one mile from the Western Union office; that on September 3 he had, through B. F. Casey's wife, left instructions that Casey should send to the plaintiff any message that might come for him; that Casey knew where he was at work. Having thus stated the distance from the defendant's

office to the place where he was at work, the plaintiff was permitted, over the objection of the defendant on the ground of opinion evidence, to further state that it would have taken a party not over thirty minutes to deliver a message to him where he was working on that day. We hold that the action of the court in thus permitting the witness to testify does not call for a reversal of this judgment.

3. The court correctly permitted the plaintiff to read to the jury the following testimony of Mrs. B. F. Casey on cross-examination: "Mr. Drake said that his mother was very sick, and that he was expecting a telegram, and that it would come in care of B. F. Casey, Cotton Belt yards, and for him to deliver the same at Mr. Drake's residence immediately. Mr. Drake said this about the 3rd or 4th of September, 1894, at my house. There was no one present, as I remember." The testimony was objected to on the ground that it was hearsay, irrelevant and immaterial.

The witness had previously testified, without objection, in answer to direct interrogatories, that Mr. Drake had told her on the 3rd or 4th of September that his mother was very sick, that he was expecting a telegram in relation to her condition, and had requested it to be sent to the care of her husband, B. F. Casey, who was to deliver it to the plaintiff as soon as received, and that she had delivered Mr. Drake's request to her husband as soon as he came home on the same day. This testimony was admissible as showing the precautionary measures that had been taken by the plaintiff to secure the prompt delivery of the message, thus enabling him to reach his mother before her death.

4. It appears that on September 3, 1894, the plaintiff wrote to his brother-in-law Joe Harding a letter in which he requested the latter to wire him at once, in care of B. F. Casey, Cotton Belt yards, Texarkana, if his mother's condition should indicate that there was no chance for her recovery. In this letter he mentioned the receipt of a letter stating that his mother was very sick.

On this evidence the defendant requested a special charge to the effect that if the jury should believe that prior to the delivery of the message in question in this case plaintiff had received information, through letters received by him from members of his family, of the condition of his mother's health, they would find for defendant. This instruction was properly refused. The letters referred to did not necessarily indicate that the mother's condition was such as to preclude the possibility of recovery. Indeed, they stimulated the plaintiff to adopt the very precautions to which he resorted in this instance to secure by the message in question the knowledge of his mother's extreme condition, should it arise, which would require his presence. The charge would have been misleading and highly improper.

5. The plaintiff testified that, if the message had been delivered to him on the 5th, he would have gone at once to Gainesville, and would have reached that place on the 6th about 12 o'clock (prior to his mother's death about 12 o'clock noon on September 7). He further testified that

whenever he wanted to leave he had to notify his roadmaster and obtain leave of absence, before he could go.

We think that it reasonably appears from his previous statement, to the effect that, had the message been delivered, he would have gone at once to Gainesville, that such leave would have been obtained. Hence the court, for manifest reasons, properly refused the special instruction to the effect that the jury would find for the defendant if they believed that the "plaintiff's going to his mother's bedside depended upon the permission of the roadmaster under whom plaintiff was working."

6. As we have already indicated, the evidence in this case sustains the verdict.

All the assignments are hence overruled, and the judgment is affirmed.

*Affirmed.*